## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| INTIMATECO LLC, | : | **Civil Action No. 23-1759 (SRC)** |
| | : | |
| Plaintiff, | : | **SECOND AMENDED** |
| | : | **OPINION & ORDER** |
| v. | : | |
| | : | |
| APPAREL DISTRIBUTION, INC., | : | |
| DAVID SIGNORILE, ROBERT SHAW, | : | |
| AND MICHAEL DORAN, | : | |
| | : | |
| Defendants. | : | |

**CHESLER**, District Judge

 The Court's Amended Opinion & Order issued on November 7, 2023 (ECF No. 50) is hereby further amended to reflect the proper Court Registry Investment System fund into which the funds deposited with the Court pursuant to Defendant Michael Doran's motion to deposit funds under Federal Rule of Civil Procedure and Local Rule 67.1 should be invested. <u>See</u> L. Civ. R. 67.1(a)(2)(C) & (D).

 This matter comes before the court on partial motions to dismiss various claims and counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) by both plaintiff Intimateco LLC ("Plaintiff" or "Intimateco") and defendants Apparel Distribution, Inc. ("ADI"), David Signorile ("Signorile"), Robert Shaw ("Shaw"), and Michael Doran ("Doran") (collectively, "Defendants"). In addition, defendant Doran moves to deposit funds into a court account pursuant to Federal Rule of Civil Procedure 67 and Local Rule of Civil Procedure 67.1; Plaintiff opposes this motion and moves for the Court to direct a transfer of funds held in escrow. Finally, Plaintiff

moves for leave to file an answer to the first counterclaim after disposition of Plaintiff's motion to dismiss the second counterclaim. The Court has reviewed the papers submitted and proceeds to rule without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, Doran's motion to deposit funds into Court and dismiss Count Six is granted, Plaintiff's motion to direct a transfer of funds held in escrow is denied, Plaintiff's motion to dismiss the Second Counterclaim is denied, Defendants' motion to dismiss Counts Four and Five is granted, and Plaintiff's motion for leave to file an Answer to the First Counterclaim is granted.

## I

This dispute stems from the breakdown of a business arrangement between Plaintiff and ADI. Plaintiff is a manufacturer and wholesaler of wearable merchandise who sells to retailers, and ADI is a provider of warehouse and inventory services. On or about June 10, 2022, Intimateco and ADI entered into a Warehouse Services Agreement ("the Agreement"). Under the terms of the Agreement, ADI would store and manage inventory for Intimateco, and Intimateco would compensate ADI for these services pursuant to a payment schedule. The Agreement set out the terms of the arrangement, and the parties proceeded under those terms until early November 2022. Intimateco alleges that ADI breached the terms of the Agreement in myriad ways from the beginning of ADI's performance under the Agreement in July 2022 through November 2022. See First Amended Complaint at ¶¶ 9-15.

On November 15, 2022, plaintiff met with ADI and communicated its desire to terminate the arrangement and transfer all Intimateco merchandise to another warehouse company. On January 3, 2023, the parties executed a conditional mutual release ("the Release" or "the escrow agreement") under which Intimateco would pay $15,000 into an escrow account managed by

Defendant Michael Doran as escrow agent.[1] See Exhibit 1 to Docket Entry No. 6. Doran would release the escrow payment to ADI upon ADI's full performance under the Release, primarily consisting of returning over 200,000 items of Intimateco merchandize listed in Exhibit A to the Release. Over several dates since the execution of the Release, Plaintiff has removed the bulk of its merchandise from ADI's warehouses. The parties dispute how much of Plaintiff's merchandise remains in ADI's possession and, as a result, whether the Release has been fully performed or breached.

On March 28, 2023, Plaintiff initiated this suit. The First Amended Complaint, filed on April 19, 2023, lists six causes of action: declaratory judgment, breach of the Agreement, gross negligence, fraud, negligent misrepresentation, and breach of the escrow agreement.[2] Defendants answered on July 14, 2023 and brought two counterclaims: breach of contract for failure to pay invoices under the Agreement and, in the alternative, breach of the escrow agreement. The crux of the dispute outlined in the First Amended Complaint, the Answer, and the instant motions surrounds whether ADI has released the entire stock of Intimateco merchandise enumerated in the Release and, by extension, whether the Release has been fully performed or breached. These questions form the basis of Plaintiff's breach of escrow agreement claim (Count Six) and ADI's Second Counterclaim, also for breach of the escrow agreement. In turn, the parties dispute the proper disposition of the money currently held in escrow. Plaintiff argues that Defendant ADI's

---

[1] Doran is a defendant in this action (representing himself *pro se*), the escrow agent overseeing the funds identified in the Mutual Release, and counsel for ADI. While the Release contemplated an escrow payment of $15,000, the amount of funds deposited into escrow was $14,980. See Exhibit A to Certification of Michael S. Doran (ECF No. 14-2). Neither party raises a dispute over this amount.

[2] Counts One, Two, and Three of the First Amended Complaint (for declaratory judgment, breach of the Agreement, and gross negligence) are not at issue in the motions currently pending before the Court.

breach of the Release requires that the money be returned, and Defendant argues both that the Release has not been breached and that the funds should be deposited with the Court until the Court rules on the proper disposition of the money. In addition to the conflict surrounding the disposition of the merchandise and the escrow funds, Plaintiff argues in Counts Four and Five that ADI (as well as defendants Signorile, the owner of ADI, and Shaw, an officer of ADI) defrauded Plaintiff by inaccurately representing ADI's capacity to handle Intimateco's inventory and storage needs.

Defendants moved to deposit the escrow funds into Court and to dismiss Count Six on July 14, 2023. Intimateco opposed that motion and filed a cross-motion to direct a payment of the escrow amount to itself on August 3, 2023. ADI opposed the cross-motion on August 14, 2023, and Plaintiff filed a sur-reply on August 18, 2023. Defendants moved to dismiss Counts Four and Five (the fraud and negligent misrepresentation claims) on July 14, 2023, Plaintiff opposed that motion on August 7, 2023, and Defendants filed a reply on August 14, 2023. Plaintiff moved to dismiss the Second Counterclaim (for breach of the escrow agreement) and, in the alternative, for leave to file an answer to the First Counterclaim after disposition of their motion to dismiss the Second Counterclaim on August 2, 2023. Defendant opposed the motion to dismiss the Second Counterclaim on August 16, 2023, and Plaintiff filed a reply on August 18, 2023.

## II

To withstand a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). A district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings." Id. at 1426. However, the court may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint." Id. (citations omitted).[3]

## A

Defendant Doran first moves to dismiss Count 6 of the First Amended Complaint. In order for a breach of contract action to lie under New Jersey law, Defendants must prove by a preponderance of the evidence that (1) the parties entered into a contract containing certain terms,

---

[3] Throughout its pleadings, Plaintiff cites precedents and legal standards of the U.S. Court of Appeals for the Second Circuit and the district courts contained therein. Parties are reminded that precedents of the Second Circuit and its districts are not binding on this Court. While those precedents are persuasive, and with due respect to our sister circuit, this Court is only bound by precedents of the Supreme Court of the United States, the U.S. Court of Appeals for the Third Circuit, and on matters of state law, the New Jersey Supreme Court. See, e.g., In re Grossman's Inc., 607 F.3d 114, 121 (3d Cir. 2010) ("[W]e decide cases before us based on our own examination of the issue, not on the views of other jurisdictions."). The legal standards that guide this Court's analysis, including those that dictate how this Court disposes of a motion to dismiss under Rule 12(b)(6), are those articulated by the Supreme Court as interpreted by the Third Circuit in its published opinions.

(2) plaintiffs did what the contract required them to do, (3) defendants did not do what the contract required them to do, and (4) that failure to do what was required caused a loss to plaintiffs. Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006); Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016). A party to the contract "violates the terms of a contract by failing to fulfill a requirement enumerated in the agreement." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019). Whether Defendant is correct that Count 6 fails to state a claim hinges on two related questions of contractual interpretation: first, whether Doran, as escrow agent, is a proper party, and second, if he is, whether he breached his contractual obligations by refusing to release the funds back to Plaintiff.

Doran is clearly not a signatory to the Release and therefore is not a proper party. The Release enumerates two "parties": Intimateco and ADI. The escrow payment is referenced in the document, but Doran himself is not. Even assuming Doran was a party to the Release, Doran would still not have breached any contractual obligations. Doran's only obligations are the fiduciary obligations that accompany his role as escrow agent and the release of the funds once the parties to the contract complete performance. In another case, this Court dismissed a breach of contract action against a law firm acting as escrow agent because the contract language only referenced "the parties" or "party" and did not directly reference the escrow agent. Poe & Friedrich, P.A. v. M&M Sports, Inc., No. 04-6272 (DRD), 2005 WL 8175135, at *4 (D.N.J. Nov. 30, 2005). There, this Court held that, while the agreement provided for arbitration of all disputes under the contract in Germany, the agreement imposed no prohibitions on the escrow agent taking advantage of the federal interpleader statute. Id. In this case, the Release merely requires Doran to release the funds to ADI upon ADI's performance under the Release; it imposes no obligations or prohibitions on Doran in the event that the Release is breached by one of the parties. Doran himself is therefore

6

not the proper target of a breach of contract action related to a failure to perform obligations under the Release itself, and his motion to dismiss will be granted.

<b>B</b>

Next, Plaintiff moves to dismiss the second counterclaim.[4] The burden to prove that a party has failed to state a claim is on the party moving for dismissal under Rule 12(b)(6). That burden requires the moving party to demonstrate that a complaint fails to state a claim. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). A complaint fails to state a claim when it does not state a ground upon which relief can plausibly be granted. Ashcroft, 556 U.S. at 678. A claim is "plausible" when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). As discussed above, a breach of contract claim under New Jersey law requires (1) the existence of a contract, (2) one party's performance under the contract, (3) another party's nonperformance, and (4) damages to the party caused by the counterparty's nonperformance. Globe Motor Co., 225 N.J. at 482.

This claim cuts to the core of the parties' dispute: did ADI return all of Intimateco's merchandise pursuant to the terms of the escrow agreement or not? In the Second Counterclaim, ADI alleges that "Intimateco violated the terms of the [Release], and its inventory report is not accurate and cannot be relied upon pursuant to the Escrow Agreement. As set forth under the terms of the Escrow Agreement, ADI has returned all of Intimateco's merchandise. Yet, Intimateco refuses to allow the release of the [escrow funds]." Defendants' Counterclaims ¶¶ 19-21. On its

---

[4] The same legal standards that apply to the evaluation of a motion to dismiss for failure to state a claim apply to motions to dismiss counterclaims. See, e.g., Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 955-56 (3d Cir. 2011).

7

face, this presents a plausible basis upon which relief could be granted. If, in fact, Intimateco's inventory report is not accurate and ADI properly returned the merchandise, then ADI has performed under the contract and is entitled to the full balance of the escrow funds, in which case Intimateco has breached the contract by refusing to allow the release of the funds to ADI. This chain of inferences easily satisfies the "plausibility" bar and presents a classic discoverable issue. Iqbal, 556 U.S. at 678.

Plaintiff fails to meet its burden to rebut ADI's allegation that its initial inventory report, provided under the Warehouse Services Agreement (the contract governing the initial relationship between Intimateco and ADI), is inaccurate. Instead, Plaintiff alleges that ADI's mention of the total number of merchandise pieces transferred under the Agreement is "irrelevant." Plaintiff's Motion to Dismiss the Second Counterclaim (Docket Entry No. 20) at 4. However, this information is not irrelevant: if the inventory report, incorporated as Exhibit A to the Mutual Release, is inaccurate, that would certainly bear on the question of whether ADI returned all of Intimateco's merchandise in its possession. The closest Intimateco comes to rebutting ADI's counterclaim allegations is its assertion that defendant Doran's April 3, 2023 email to counsel for Plaintiff— informing Intimateco of some additional merchandise identified in ADI's warehouse—is functionally an admission that ADI has violated the mutual release. See Exhibit C to Plaintiff's Motion to Dismiss the Second Counterclaim (Docket Entry No. 20-5) (hereinafter "Docket Entry No. 20-5"). But this email is not the silver bullet that Plaintiff claims it to be. The email was sent on April 3, 2023. As ADI points out, "Plaintiff's own Amended Complaint states ADI allowed Plaintiff to retrieve this merchandise on April 6, 2023—three days later." Opposition to Motion to Dismiss Second Counterclaim (Docket Entry No. 32) at 10 (citing First Amended Complaint at ¶ 20) (emphasis in original). If discovery reveals that this was, in fact, the balance of the merchandise

8

in ADI's possession, then this too would have a substantial bearing on whether Intimateco has breached the Release by refusing to release the escrow funds. Indeed, the substance of the email further supports ADI's specific counterclaim allegation: Doran (speaking here in his capacity as counsel for ADI) notes in the email that the merchandise in question was "received as transfers by ADI" and "repackaged by Intimateco's prior warehouse and, therefore, did not have reliable markings . . . likely caus[ing] inventory count inaccuracies." Docket Entry No. 20-5; see Defendants' Counterclaims at ¶ 19 ("[Intimateco's] inventory report is not accurate and cannot be relied upon pursuant to the Escrow Agreement."). Plaintiff does not rebut these allegations either in its initial motion to dismiss nor in its reply. Thus, Defendant has stated a plausible basis for relief and Plaintiff has failed to meet its burden under Rule 12(b)(6). Plaintiff's motion to dismiss the Second Counterclaim will therefore be denied.

## C

Having determined that the dispute regarding the breach of the escrow agreement is live, the Court next turns to the motions regarding the proper disposition of the escrow funds.

## 1

Plaintiff moves for the court to direct payment of the escrow funds to Plaintiff itself, even before the Court has made any kind of preliminary merits determination regarding the disposition of the funds. This request defies common sense and lacks any ascertainable basis in precedent. By definition, at the motion to dismiss stage, neither party has been found liable for a breach of contract such that the imposition of any kind of legal remedy would be appropriate. Cf. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (holding that on a Rule 12(b)(6) motion, the court "do[es] not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims" (citing Scheuer, 416 U.S. at 235)). On the motions currently

9

pending, this Court merely must determine whether sufficient facts have been pled such that the nonmoving party is entitled to "offer evidence to support the claims." In re Burlington Coat Factory, 114 F.3d at 1420 (quoting Scheuer, 416 U.S. at 235). Ordering a transfer of funds from one party to another would effectively constitute a damages award—wholly premature given that this Court has made no substantive, legal determinations regarding whether either party has breached the escrow agreement.

A direction such as that which Plaintiff seeks is only appropriate in contexts where some financial obligation has already been proven such as in bankruptcy proceedings, e.g., In re Pittsburgh Corning Corp., No. 00-2710, 00-22875, 2000 WL 1373001, at *1 (Bankr. W.D. Pa. Sept. 20, 2000) (declining to order a transfer of payment where a check was delivered prior to the date of Chapter 11 filing), restitution actions, e.g., United States v. Scarboro, 352 F. Supp. 2d 714, 718 (E.D. Va. 2005) (ordering payment in satisfaction of restitutionary judgment), default judgments, e.g., Amerisourcebergen Drug Corp. v. Burks, No. 04-0058, 2005 WL 8161805, at *6 (N.D. Va. Dec. 20, 2005) (ordering payment in satisfaction of a writ of execution after a finding of default), actions to recover attorney's fees, e.g., Elusta v. City of Chicago, No. 06-4264, 2011 WL 1691915, at *7 (N.D. Ill. May 4, 2011) (ordering payment of attorney's fees in Section 1983 action pursuant to contingency arrangement), actions for payment of expert fees, e.g., Grant v. Otis Elevator Co., 199 F.R.D. 673, 676-77 (N.D. Okla. 2001) (finding that a treating physician who formed a medical opinion for the purposes of litigation is entitled to reasonable expert fees and directing payment to said physician), or where a stay has dissolved and plaintiff seeks payment of a judgment, e.g., Brinkman v. Dep't of Corr. of State of Kan., 857 F. Supp. 775, 777 (D. Kan. 1994) (ordering direction of payment of judgment despite pending petition for a writ of certiorari where the defendant has failed to apply for a stay from the court of appeals or the Supreme Court).

This Court has not identified any example of a federal district court directing payment of funds at the motion to dismiss stage while the disposition of those funds is still in substantive dispute (or an appellate decision blessing such an action), nor does Plaintiff point the Court to any such case. Plaintiff's only citation in support of its request is <u>Arizona v. California</u>, 530 U.S. 392 (2000). In that case, the Supreme Court held that it would not *sua sponte* raise a preclusion bar outside of "special circumstances" such as where the court was on notice that it previously decided the same issue. <u>Id.</u> at 412-13. That case is entirely irrelevant to the question of whether this Court can, or should, direct a transfer of the funds at the motion to dismiss stage.

The motion to direct a transfer of funds will therefore be denied.

## 2

Federal Rule of Civil Procedure 67(a) provides that where "any part of the relief sought is . . . the disposition of a sum of money . . . a party—on notice to every other party and by leave of court—may deposit with the court all or part of the money . . . whether or not that party claims any of it." <u>See also</u> L. R. Civ. P. 67.1(a)(1)(A) ("Unless an applicable statute requires the deposit of funds without leave of court, no money shall be sent to the Court or its officers for deposit into the Court's Registry without a court order by the Judge assigned to the case."). Rule 67 is a "procedural device" that is meant to facilitate "safekeeping for disputed funds pending resolution of a legal dispute." <u>Jarzyna v. Home Properties, L.P.</u>, 201 F. Supp. 3d 650, 655 (E.D. Pa. 2016) (quoting <u>Prudential Ins. Co. of Am. V. BMC Indus., Inc.</u>, 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986)). The Rule may not be used as a means of "altering the legal rights and duties of each party," nor as a means of seizing property to secure a later judgement. <u>Browning Ferris, Inc. v. Montgomery Cnty.</u>, 90-3258, 1990 WL 131937, at *2 (E.D. Pa. Sept. 4, 1990) (citing <u>Baxter v. United Forest Prods. Co.</u>, 406 F.2d 1120, 1126 (8th Cir. 1969)). Depositing funds pursuant to Rule

67(a) "may be particularly attractive to defendants because it would ensure that the plaintiff can obtain the money, yet allow the defendant to reclaim the funds if the court refuses to dismiss the case." Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 186 n.2 (2016) (Alito, J., dissenting). "The Court has discretion to permit a deposit pursuant to Rule 67." Home Revolution, LLC v. Jerrick Media Holdings, Inc., No. 20-7775, 2021 WL 631926, at *3-4 (D.N.J. Feb. 17, 2021) (citing Progressive Cas. Ins. Co. v. Drive Trademark Holdings LP, 680 F. Supp. 2d 639, 641 (D. Del. 2010)).

This case is a textbook candidate for Rule 67 deposit. A definite sum of money is currently held in escrow. The disposition of the funds is squarely in dispute—Intimateco claims it is entitled to the return of the funds because ADI breached the Release, while ADI claims that it is entitled to the money because it has fully performed under the Release and Intimateco has breached the Release by refusing to release the funds. Depositing funds into court would ensure that a neutral party can "relieve [Doran] of responsibility for a fund in dispute." 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2991 (3d ed. 2023). See Progressive Cas. Ins. Co., 680 F. Supp. at 641 ("Rule 67 should . . . be used as a procedural device to provide a place of safekeeping for disputed funds."). Contrary to Plaintiff's suggestion, there is a genuine dispute between the parties about the disposition of the funds: Plaintiff believes it is entitled to the funds, and Defendant ADI believes it is entitled to the funds. Cf., e.g., Progressive Cas. Ins. Co., 680 F. Supp. 2d at 641 (denying Rule 67 motion because the disputed funds were a license fee owed under the disputed agreement in contrast with funds held in escrow); Prudential Ins. Co., 630 F. Supp. at 1300 (denying Rule 67 motion where plaintiffs sought to use the Rule to "effect a legal transfer of property" as opposed to segregating the funds for safekeeping while the Court determines their proper disposition). The Second Counterclaim deals in substance with the proper

disposition of the funds. <u>See</u> <u>supra</u> at II(B). If the Court ultimately holds that Plaintiff violated the Release, Defendant will receive the funds; if Defendant violated the Release, Plaintiff will receive the funds. Until that determination is made, a Rule 67 deposit will ensure that the funds can be safeguarded by a neutral party—precisely the intent behind the mechanism. <u>See</u> <u>Fulton Dental, LLC v. Bisco, Inc.</u>, 860 F.3d 541 (7th Cir. 2017) ("What Rule 67 is *not* is a vehicle for determining ownership; that is what the underlying litigation is for." (emphasis in original)); <u>see also</u> <u>Alstom Caribe, Inc. v. George P. Reintjes Co.</u>, 484 F.3d 106, 113 (1st Cir. 2007) ("The core purpose of Rule 67 is to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto.").

Therefore, the motion to deposit funds into Court pursuant to Rule 67(a) and Local Rule 67.1 will be granted.

### III

Federal Rule of Civil Procedure 9(b), which applies to claims sounding in fraud, sets a heightened pleading requirement beyond the standard articulated in Rule 8(a) as interpreted in <u>Iqbal</u>, <u>Twombly</u>, and their Third Circuit progeny. <u>See</u> <u>supra</u> at II(A). A complaint listing a claim sounding in fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Third Circuit has held that to satisfy Rule 9(b)'s stringent standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007). As with all Rule 12(b)(6) motions, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. <u>Iqbal</u>, 556 U.S. at

678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## A

The economic loss doctrine prevents plaintiffs "from recovering in tort economic losses to which their entitlement flows only from a contract." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002). In other words, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002); see also CPS MedManagement LLC v. Bergen Regional Medical Center, L.P., 940 F. Supp 2d 141, 159 (D.N.J. 2013). The economic loss doctrine reflects a "policy choice that economic losses inflicted by a seller of goods are better resolved under principles of contract law." Spring Motor Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 579 (1985). Under New Jersey law, while "a tort action is separate and distinct from a contract action, the boundary line between tort and contract actions is not capable of clear demarcation." Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 245 (3d Cir. 2010) (citing Huck v. Gabriel Realty, 136 N.J. Super. 468, 474 (N.J. Super. Ct. Law Div. 1975); New Mea Constr. Co. v. Harper, 203 N.J. Super. 486, 493 (N.J Super. Ct. Law Div. 1985) (internal quotations omitted)). New Jersey courts have "continued to affirm the conceptual distinction between misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promise, and the subsequent failure of the promisor to do what he has promised." Bracco Diagnostics, 226 F. Supp. 2d at 563. In other words, the economic loss doctrine applies differently to ADI's allegedly tortious pre-contractual and post-contractual statements.

**1**

While there has been no clear statement from the New Jersey Supreme Court on whether post-contractual statements are actionable in tort, state and federal courts in New Jersey generally only "permit fraud claims to proceed with a breach of contract claim when the fraud arises out of fraud in the inducement or pre-contractual misrepresentations." Ross v. Celtron Intern., Inc., 494 F. Supp. 2d 288, 298 (D.N.J. 2007); see also, e.g., Vukovich v. Haifa, Inc., No. 03-0737, 2007 WL 655597, at *7-8 (D.N.J. Feb. 28, 2007) (recognizing that "federal courts in this district, as well as New Jersey state courts, have permitted fraud claims to proceed alongside a breach of contract when the claims arise out of fraud in the inducement or pre-contractual misrepresentations").

Applying the approach of this District and the New Jersey state courts, the post-contractual statements here alleged to constitute fraud and negligent misrepresentation are not actionable in tort. The post-contractual statements by ADI, Signorile, and Shaw listed in the First Amended Complaint fall within the ambit of contractual performance and "could have been addressed in the[] agreement." Spring Motors, 98 N.J. at 580. As discussed above, while the demarcation between contract and tort is often blurry, the post-contractual statements here do not present a close case—they pertain directly to whether Defendants performed under the contract. Cf. Travelers Indem. Co., 594 F.3d at 245 (describing the particular difficulty in making the contract/tort distinction in products liability actions). Thus, the economic loss rule is appropriately applied to tort claims based on these post-contractual statements.

**2**

Pre-contractual statements may constitute fraud in the inducement, thereby providing an exception to the economic loss doctrine's application. See State Capital Title & Abstract Co. v. Pappas Business Servs., LLC, 646 F. Supp. 2d 668, 676 (D.N.J. 2009) ("[A] plaintiff may be

permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement."). However, New Jersey's economic loss doctrine prohibits tort claims based on pre-contractual statements where the statements are not "extraneous to the contract." <u>Unifoil Corp. v. Cheque Printers and Encoders Ltd.</u>, 622 F. Supp. 268, 271 (D.N.J. 1985). Tort claims sounding in fraud in the inducement may not proceed where the statements are addressed in the contract and Defendant's performance has the same measure of damages as the breach of contract claim. <u>RNC Sys. v. Modern Tech Group, Inc.</u>, 861 F. Supp. 2d 436, 453 (D.N.J. 2012).

The First Amended Complaint points to representations made by Shaw during contractual negotiations. <u>See</u> First Amended Complaint at ¶¶ 40-42. These representations were then incorporated directly into the Agreement. <u>See</u> <u>id.</u> at ¶ 42. Absent Defendants' breach of the provisions of the Agreement relating to ADI's ability to perform, Plaintiffs would have no breach of contract claim. In fact, Plaintiffs plead a separate cause of action for breach of contract based on losses sustained specifically as a result of the statements Shaw made that form the basis of their fraud and negligent misrepresentation claims here. <u>See</u> <u>id.</u> at ¶¶ 30-34. Plaintiff's argument that Shaw's representation to Intimateco are extrinsic to the contract are thus unavailing, and the fraud in the inducement exception to the economic loss doctrine is therefore inapplicable.

**3**

Plaintiff points to two further exceptions to the economic loss doctrine under New Jersey law. Neither is applicable to this case.

First, Plaintiff argues that it would have no other remedy against defendants Shaw and Signorile aside from tort remedies. Plaintiffs are correct that under New Jersey law, where an

injured party would otherwise have no remedy against a defendant, the economic loss doctrine does not bar recovery. People Express Airlines v. Consol. Rail Corp., 100 N.J. 246, 249-50 (1985). At the outset, Plaintiff pleads a breach of contract claim based on the same conduct alleged to constitute fraud and negligent misrepresentation, so their "no other remedy" argument is contradictory. But beyond the fact that Plaintiffs themselves plead another remedy against the alleged conduct here, the "no other remedy" exception only applies where there is no privity of contract between the victim and the tortfeasor. Id. at 256 ("[T]he cases . . . involve tort claims by innocent third parties who suffered purely economic losses at the hands of negligent defendants with whom no direct relationship existed."). This does not describe the case at bar. Plaintiff and Defendants are sophisticated commercial entities litigating the termination of a business relationship—not an airline who lost business because of an explosion in a neighboring railyard. See generally id. Shaw and Signorile are sued in their capacities as officers of ADI. That entity contracted with Intimateco. Shaw and Signorile spoke for ADI in making the purportedly fraudulent statements. All entities involved in this suit are therefore in privity of contract, and this exception to the economic loss rule does not apply.

Finally, Plaintiffs claim that ADI's superior knowledge of the warehousing and inventory management business creates a special relationship between these two entities such that ADI owed Intimateco an independent duty. This exception is wholly irrelevant to the contractual relationship here. The independent duty exception applies where the law specifically imposes a heightened duty in a particular relationship between two parties, such as between doctors and patients, lawyers and clients, or insurance brokers and clients. Saltiel, 170 N.J. at 316-17. The independent duty exception is immaterial to a case where two sophisticated commercial entities have entered a contractual relationship. In Saltiel v. GSI Consultants, Inc., the New Jersey Supreme Court

specifically held that, under New Jersey law, where a tort claim arose from the failure to apply specific technical skills that it was "obligated to apply under the contract," the proper remedy for such a violation sounds in contract, not tort. Id. So too here, Plaintiff seeks a tort remedy to hold ADI accountable for purported violations of the terms of a contract. That is an impermissible application of the independent duty rule.

Thus, no exception to the economic loss rule applies in this case.

## B

Rule 9(b)'s heightened pleading standard requires pleadings sounding in fraud to state the purportedly fraudulent statements "with particularity." Fed. R. Civ. P. 9(b). The Third Circuit has interpreted this standard to mean "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Federico, 507 F.3d at 201 (quoting Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)). The elements of common law fraud in New Jersey are material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment, and damages. Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624 (1981); Gennari v. Weichert Realtors, 140 N.J. 582, 610 (1997). An actionable fraud claim "must relate to a present or preexisting fact and cannot ordinarily be predicated on representations which involve things to be done in the future." Anderson v. Modica, 4 N.J. 383, 392 (1950); see also Fabbro v. DRX Urgent Care, LLC, 616 F. App'x 485, 489 (3d Cir. 2015) (affirming dismissal of fraud claims based on precontractual and good faith cost estimates). Neither "mere nonperformance," expressions of "vague and ill-defined opinions," nor "puffery" are sufficient to constitute material misrepresentations. Notch View Assocs. v. Smith, 260 N.J. Super. 190, 203 (N.J. Super. Ct. Law

18

Div. 1992); <u>Alexander v. CIGNA Corp.</u>, 991 F. Supp. 427, 435 (D.N.J. 1997); <u>Ponzio v. Mercedez-Benz USA, LLC</u>, 447 F. Supp. 3d 194, 235 (D.N.J. 2020).

Plaintiff alleges that Defendant Shaw's October 30, 2020 email asserting that ADI had the "experience, industry knowledge, systems, processes, and . . . staff" to "get the job done" as well as Shaw's statements during a phone call shortly prior to entering the contract constituted material misrepresentations which satisfy the first element of common law fraud. Well-established case law on fraud in commercial relationships counsels otherwise. In one foundational New Jersey case, for instance, the New Jersey Supreme Court reversed a judgment entered pursuant to a jury verdict where a defendant offered a milk route to the Plaintiff which turned out to be significantly less profitable than anticipated. <u>Anderson</u>, 4 N.J. at 389. The Court observed that "the alleged representation to induce a retention of the customers was a promise to perform an act in the future and is not in a legal sense a representation." <u>Id.</u> at 392. Just as Modica made particular statements to Anderson to entice Anderson into a milk delivery contract, so too did ADI made certain statements to Intimateco in order to acquire its merchandise management business. At worst, ADI's representations were mere puffery. Shaw made "vague, highly subjective claims as opposed to specific, detailed factual assertions." <u>Ponzio</u>, 447 F. Supp. 3d at 234 (quoting <u>In re Toshiba America HD DVD Marketing and Sales Practices Litig.</u>, No. 08-0939, 2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009)). This Court in <u>Ponzio v. Mercedez-Benz USA, LLC</u> found that specific statements regarding components of a vehicle and production processes were not puffery. <u>See</u> <u>id.</u> at 235 (listing specific statements and holding that these statements were not puffery). By contrast, Shaw's statements were generalized assurances of business capability. Were ADI's representations here actionable, "any breach of contract [could] be cast as a claim that a party secretly never

intended to honor it." Munenzon v. Peters Advisors, LLC, 553 F. Supp. 3d 187, 205 (D.N.J. 2021). That cannot be so. Count Four of the First Amended Complaint will therefore be dismissed.

C

The elements of a cause of action for negligent misrepresentation under New Jersey law are (1) the negligent provision of false information, (2) the aggrieved party is the reasonably foreseeable recipient of the representation for its proper business purpose, (3) the aggrieved party relies on the misrepresentation, and (4) the misrepresentation is the proximate cause of the aggrieved party's damages. Karu v. Feldman, 119 N.J. 135, 146-47 (1990). Critically, for a plaintiff to successfully state a claim for negligent misrepresentation, the plaintiff must show that "the defendant being considered owed [the plaintiff] a relevant duty of care." Highlands Ins. Co. v. Hobbs. Grp., LLC, 373 F.3d 347, 351 (3d Cir. 2004) (citing City Check Cashing, Inc. v. Mfrs. Hanover Tr. Co., 166 N.J. 49, 59 (2001)). A negligent misrepresentation claim "is not cognizable as between commercial parties engaged in a direct contractual relationship resulting from arms-length negotiations" because "no 'special duty of care' between the contracting parties exists in such a case." Westmont Dev. Grp., LLC v. Township of Haddon, 625 F. Supp. 2d 178, 198 (D.N.J. 2009) (quoting Commerce Bancorp, Inc. v. BK Intern. Ins. Brokers, Ltd., 490 F. Supp. 2d 556, 564 (D.N.J. 2007).

For similar reasons why there is no special relationship to evade the economic loss doctrine as described above, see supra at III(A)(3), there is no special relationship to establish a duty of care between ADI and Intimateco. Both parties are sophisticated business entities. The purportedly negligent misrepresentations occurred in the context of their relationship as parties to a business contract. The law of New Jersey is eminently clear: there is no special relationship that can give

20

rise to a heightened duty of care between two business entities negotiating at arm's length. Count Five of the Fifth Cause of Action will therefore be dismissed.

## IV

Plaintiff moves for leave to file an answer to the first counterclaim under Rule 12(a)(4). That rule provides that service of a motion under Rule 12 suspends the movant's time to file a responsive pleading until fourteen days following the disposition of the motion. Fed. R. Civ. P. 12(a)(4)(A); see United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 153 (3d Cir. 2003). In at least one other case, a district court within the Third Circuit declined to enter default where the defendant answered within fourteen days after the court granted a partial motion to dismiss. Edwards v. Rice-Smith, 606 F. Supp. 3d 151, 157 (E.D. Pa. 2022). As such, having disposed of the partial motions to dismiss in this case, Plaintiff's request is granted.

\*          \*          \*

For these reasons,

**IT IS** on this 17th day of November, 2023

**ORDERED** that Defendant Michael Doran's motion to dismiss Count Six of the First Amended Complaint (Docket Entry No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant Michael Doran's motion to deposit funds into Court (Docket Entry No. 14) is **GRANTED**; and it is further

**ORDERED** that within 14 days of Defendant Michael Doran's receipt of this Order, he shall deposit the escrow funds in the amount of $14,980 with the Clerk of this Court; and it is further

**ORDERED** that the sum of $14,980 be deposited by the Clerk of Court into the Registry of this Court and then, as soon as the business of his or her office allows, the Clerk of Court shall

deposit these funds into the interest-bearing Liquidity Fund established within the Court Registry Investment System ("CRIS") and administered by the Administrative Office of the United States Courts, as Custodian, which shall be responsible for meeting all Liquidity Fund tax administration requirements, pursuant to L. Civ. R. 67.1(a)(2); and it is further

      **ORDERED** that Plaintiff's cross-motion to direct payment of $14,980 to Plaintiff (Docket Entry No. 22) is **DENIED**; and it is further

      **ORDERED** that Plaintiff's motion to dismiss the Second Counterclaim (Docket Entry No. 20) is **DENIED**; and it is further

      **ORDERED** that Plaintiff's motion for leave to file an answer to the First Counterclaim (Docket Entry No. 20) is **GRANTED**; and it is further

      **ORDERED** that Defendant's motion to dismiss Counts Four and Five of the First Amended Complaint (Docket Entry No. 15) is **GRANTED**.


      s/Stanley R. Chesler
      STANLEY R. CHESLER, U.S.D.J.